Ryan Farnsworth, ID # 8885
Avery Law
770 S. Woodruff Ave
Idaho Falls, ID 83401
Tel: 208-524-3020
Fax: 208-524-2051
Email: ryan@averylaw.net
*Attorney for Plaintiff*
*Stacey Woodington*

## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO
## (SOUTHERN DIVISION)

| | |
|---|---|
| STACEY WOODINGTON,<br><br>     Plaintiff,<br><br>v.<br><br>THE BANK OF MISSOURI; SYNOVUS FINANCIAL CORPORATION; and EQUIFAX INFORMATION SERVICES, LLC,<br><br>     Defendants. | **Case No.: 1:22-cv-00228**<br><br><br>**COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL**<br><br><br> 1. **FCRA, 15 U.S.C. § 1681** *et seq.* |

Plaintiff Stacey Woodington, ("Plaintiff") through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendants The Bank Of Missouri ("Bank of Missouri"); Synovus Financial Corporation ("Synovus") (referenced collectively as "Furnisher Defendants"), and Defendant Equifax Information Services, LLC ("Equifax").

1

## I.     <u>INTRODUCTION</u>

1.      Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by Defendant Equifax.  Plaintiff contends that Equifax failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

2.      Plaintiff's Complaint also alleges that Defendant Equifax also violated 15 U.S.C. § 1681 *et seq.* by failing to reasonably investigate Plaintiff's consumer disputes, which each resulted in Defendant's reporting inaccurate information about Plaintiff.

3.      Plaintiff's Complaint also alleges violations of the FCRA against Defendants Bank of Missouri and Synovus for failing to conduct a reasonable reinvestigation after receiving notice of Plaintiff's disputes from CRA Defendants Experian, Equifax, and Trans Union (collectively referenced as the "CRAs").

## II.     <u>JURISDICTION AND VENUE</u>

4.      The District Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1681.

5.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

6.      Defendants transact business here; as such, personal jurisdiction is established.

2

### III.   PARTIES

7.      Plaintiff is a natural person who resides in Garden City, Ada County, Idaho.

8.      Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

9.      Defendant Bank of Missouri is a financial institution engaged in the business of giving credit and collecting debt. Bank of Missouri is also a *furnisher*, as contemplated by in 15 U.S.C. § 1681s-2. Upon information and belief, Bank of Missouri is regularly engaged in the business of furnishing credit information to the consumer reporting agencies. Bank of Missouri is headquartered at 906 North Kings highway Street, Perryville, Missouri 63775. Bank of Missouri can be served through their registered agent: 916 North Kings highway, Perryville, Missouri 63775.

10.     Defendant Synovus is a financial institution engaged in the business of giving credit and collecting debt. Synovus is also a *furnisher*, as contemplated by in 15 U.S.C. § 1681s-2. Upon information and belief, Synovus is regularly engaged in the business of furnishing credit information to the consumer reporting agencies. Synovus is headquartered at 1111 Bay Avenue, Suite 500, Columbus, Georgia 31901. Synovus can be served through their registered agent: Deacon Service LLC at 1111 Bay Avenue, Suite 350, Columbus, Georgia 31901.

11.     Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of "consumer reports," as defined in 15 U.S.C. § 1681a(d)), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309.

Equifax can be served through its registered agent Corporation Service Company at, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

12.    Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax regularly furnishes consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and is therefore a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA.

13.    During all times pertinent to this Complaint, Bank of Missouri, Synovus, and Equifax were authorized to conduct business in the State of Idaho and conducted business in the State of Idaho on a routine and systematic basis.

14.    During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

15.    Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## IV.    FACTUAL BACKGROUND

16.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

17.    The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the

efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

18.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

19.     The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

20.      CRA Defendants Experian, Equifax, and Trans Union, the three major consumer reporting agencies (at times referred to individually as a "CRA," and "the CRAs" collectively) in the United States, regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports (also known as credit reports).

21.     Equifax regularly obtains consumer bankruptcy information to include in consumer reports.

22.     Equifax's consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed

the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

23.     Equifax obtains consumer information from various sources. Some consumer information is sent directly to the CRAs by furnishers, and other information is independently gathered by CRAs from third party providers/vendors or repositories, like computerized reporting services like PACER and Lexis-Nexis.

24.     Equifax regularly seeks out and procures public record information, including consumer bankruptcy filing and discharge information, with the intention of including this bankruptcy information on the consumer reports they sell to third parties such as lenders.

25.     The diligence Equifax exercises in uncovering and recording consumer bankruptcy filings is not replicated in its subsequent reporting of bankruptcy filings and their effect on consumers' debts.

26.     Equifax's unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681e(b).

27.     Equifax knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in its own files.

28.     The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendants) to make lending decisions.

29.     Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, date of delinquencies contained in Defendant's consumer reports.

30.     The information Equifax includes in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Score(s).

31.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

32.     FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

 a.  "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

 b.  The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is

higher than it actually is, which will undoubtedly impact a consumer's credit score.

33.     A consumer who has filed for a Chapter 13 bankruptcy and has a consumer report that is inaccurately reporting late payments after the bankruptcy has been filed suffers greater harm than if that account were accurately reporting as having no late payments after the Chapter 13 bankruptcy filing date.

34.     Defendants are well aware that the effect of filing a Chapter 13 bankruptcy is that all statutorily dischargeable debts listed in the petition, other than those that have been successfully challenged in an adversary proceeding court, will be paid under the Chapter 13 Plan, and should not be reporting as late after the Chapter 13 filing date.

35.     Defendants are aware that according to the Credit Reporting Resource Guide® ("CRRG"), their guide for industry credit reporting standards, that once a consumer files for a Chapter 13 bankruptcy the Payment History should report the actual payment status for the month prior to the consumer filing for bankruptcy, and every month, from the time of filing to resolution, the Payment History should report as "No Data Available."

36.     Defendants are aware that per the CRRG, that from the Chapter 13 bankruptcy filing date until the Chapter 13 final resolution that no late payments should be reporting on debts included in the Chapter 13 bankruptcy.

37.     Defendants are also aware that per the CRRG, that from the Chapter 13 bankruptcy filing date until the Chapter 13 final resolution that the current balance owed (as it decreases) should be reported each month.

38.    Defendants are also aware that per the CRRG, that from the Chapter 13 bankruptcy filing date, Defendants should report the Accounts as "included in bankruptcy."

39.    Information regarding whether a debt has been included in a Chapter 13 plan is available from the same sources from which the Defendants obtain consumer bankruptcy information and from disputes from consumers.

40.    Additionally, the Equifax receives actual notice of debts that are being repaid through Chapter 13 bankruptcies from furnishers of account/tradeline information.

41.    Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, Equifax frequently reports information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

42.    Equifax's unreasonable policies and procedures cause it to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who have filed a Chapter 13 bankruptcy.

43.    Equifax routinely reports inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by § 1681(e)(b), despite possessing information inconsistent with the reported information, and information that establishes that the reported information is inaccurate.

44.    Equifax's unreasonable policies and procedures cause it to regularly report consumer information without verifying its accuracy.

45.    Equifax's unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681(e)(b).

9

46.     Equifax knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in its own files.

47.     Equifax regularly publishes consumer information that conflicts with information: provided by data furnishers to the CRAs, already included in the CRAs' credit files, contained in public records that Equifax regularly accesses, and/or sourced through the CRAs' independent and voluntary efforts.

48.     Equifax is on continued notice of its inadequate post-bankruptcy reporting procedures, including pertaining to inaccurate account and payment statuses, and failing to verify the status of accounts even after notice from the consumer, through the thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints filed against it for its inaccurate reporting following a consumer bankruptcy.

*Allegations Specific to Equifax's Credit Reporting of Plaintiff*

49.     On or about August 2017, Plaintiff obtained an unsecured charge card with WebBank, account number starting with 63699*** (the "WebBank Account").

50.     On or about October 2017, Plaintiff secured a loan with the Bank of Missouri/Milestone, account number starting with 54105*** (the "TBOM Milestone Account").

51.     On or about March 2020, Plaintiff secured a loan with the Bank of Missouri /Aspire, account number starting with 55011*** (the "TBOM Aspire Account").

52.     On or about April 2020, Plaintiff secured a loan with Synovus, account number starting with 52644*** (the "Synovus Account").

53.     Plaintiff filed a Chapter 13 Bankruptcy on or about July 29, 2020, in the United States Bankruptcy Court for the District of Idaho (Case No. 20-00698).

54.     Plaintiff included the WebBank Account, TBOM Milestone Account, the TBOM Aspire Account, and the Synovus Account (collectively "the Accounts") in her Chapter 13 bankruptcy petition and plan.

55.     Plaintiff's Chapter 13 bankruptcy plan was approved on February 24, 2021 and Plaintiff has continued to make all required payments to the Trustee according to her bankruptcy plan.

56.     Upon information and belief, Equifax prepared one or more consumer reports concerning Plaintiff after Plaintiff filed for Chapter 13 bankruptcy.

57.     Equifax also reported Plaintiff's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual, or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

58.     Equifax reported Plaintiff's bankruptcy filing information (date/reference number/chapter) in both the Public Records section, as well as in the individual tradelines of Plaintiff's consumer reports

59.     Equifax obtained notice of Plaintiff's bankruptcy filing through its routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by Defendant in Plaintiff's consumer reports.

60.     Equifax is aware that it should not report late payments for accounts included in a consumer's Chapter 13 bankruptcy after the bankruptcy filing date.

61.     Equifax should have reported the account Statuses in compliance with the CRRG as the Status at the time of Chapter 13 bankruptcy petition, and monthly Payment History as "No Data" following the bankruptcy filing date but did not.

62.     Rather than accurately report the WebBank Account with no late payments after Plaintiff filed for Chapter 13 bankruptcy, Defendant Equifax reported the WebBank Account with 120-180 day Late Payments and with increasing Balances due after the bankruptcy filing date.

63.     Rather than accurately report the TBOM Milestone Account with no late payments before or after Plaintiff filed for Chapter 13 bankruptcy, Defendant Equifax inaccurately reported in the Payment History a new "charge off" in August 2020.

64.     Rather than accurately report the TBOM Aspire Account with no late payments after Plaintiff filed for Chapter 13 bankruptcy, Defendant Equifax inaccurately reported new "charge offs" in the Payment History late payments every month from August 2020 through March 2021 inclusive.

65.     Rather than accurately report the Synovus Account with no late payments after Plaintiff filed for Chapter 13 bankruptcy, Defendant Equifax inaccurately reported in the Payment History new late payments and "charge offs" for August 2020 through November 2020 inclusive.

66.     All of the Accounts should have been reported by Equifax as having no late payments, charge offs, or past due amounts after the Chapter 13 bankruptcy filing date.

67.     However, Equifax continued to report late payments or charge offs on the Accounts after the Plaintiff filed for Chapter 13 bankruptcy.

*Plaintiff's Disputes*

68.     On or about July 16, 2021, Plaintiff sent certified letters to Experian, Equifax, and Trans Union disputing their inaccurate reporting of the WebBank Account and the TBOM Milestone Account.

69.     The letters specifically requested the CRAs to correct their inaccurate reporting of Plaintiff's TBOM Milestone and WebBank Accounts.  She advised the CRA's that she they were reporting late payments after her Chapter 13 bankruptcy filing date of July 2020 and that she had been paying the Trustee according to her Chapter 13 Bankruptcy Plan.

70.     Based on the tracking receipts, Experian, Equifax, and Trans Union received Plaintiff's dispute letters.

71.     Upon information and belief, Experian, Equifax, and Trans Union forwarded Plaintiff's disputes to Bank of Missouri and WebBank within 5 business days of receipt.

72.     Upon information and belief, Bank of Missouri and WebBank received Plaintiff's disputes.

73.     Nonetheless, Defendants failed to correct the inaccurate Payment History information on Plaintiff's credit report regarding the WebBank Account.

74.     Defendant Equifax was also reporting Plaintiff with an increasing Past Due amount for the WebBank Account after the Chapter 13 bankruptcy filing date.

75.    Defendant Equifax also failed to correct the inaccurate reporting of the TBOM Milestone Account replying, "The information you disputed has been verified as accurate...."

76.    However, CRA Defendants Trans Union and Experian did correct the reporting of the Accounts.

77.    In or around October 2021, Plaintiff realized that the Equifax was also inaccurately reporting the TBOM Aspira and Synovus Accounts on her Equifax consumer report.

78.    On or about October 22, 2021, Plaintiff sent a second set of dispute letters to Experian, Equifax, and Trans Union again disputing the inaccurate information for the all the Accounts explaining that she was making payments through her Chapter 13.

79.    Upon information and belief, Experian, Equifax, and Trans Union forwarded Plaintiff's disputes to the furnishers within 5 business days of receipt.

80.    Upon information and belief, Equifax, forwarded Plaintiff's disputes to the WebBank, Bank of Missouri, and Synovus within 5 business days of receipt.

81.    Upon information and belief WebBank, Bank of Missouri, and Synovus received Plaintiff's disputes.

82.    Nonetheless, Defendants failed to correct the inaccurate information on Plaintiff's credit report for the Accounts.

83.    Equifax did not respond to the second dispute letter.

84.    As a result of Equifax not responding to Plaintiff's second dispute letter Plaintiff sent a third dispute letter to Equifax on or about January 13, 2022 repeating the

disputes from October regarding the Accounts.

85.     Equifax replied on January 25, 2022 that the WebBank Account was "verified" and showed that no changes were made regarding the inaccurate reporting of the Payment History of 120-180 days late from August 2020 through March 2021 and past due amounts after the bankruptcy filing.

86.     In Equifax's response, it was also still inaccurately reporting the TBOM Aspire Account with a new "charge off" in August 2020 even though the account was never charged off.

87.     Equifax's response, it was also still inaccurately reporting the TBOM Milestone Account with "charge offs" from August 2020 through March 2021 even though the account was never charged off.

88.     Equifax's response, it was still inaccurately reporting the Synovus Account with "charge offs" from August 2020 through November 2020 even though the account was never charged off.

89.     Rather than perform an investigation based on Plaintiff's disputes, reasonably available public records, and information known by Equifax that Plaintiff had filed a Chapter 13 bankruptcy on or around July 29, 2020, Equifax merely parroted information furnished by Bank of Missouri, Synovus, and WebBank despite awareness that the information was factually inaccurate and conflicted with information known by the CRAs.

90.     Bank of Missouri, Synovus, and WebBank failed to conduct a reasonable investigation after receiving notice of Plaintiff's disputes from Experian, Equifax, and Trans Union.

91.     Bank of Missouri, Synovus, and WebBank failed, among other things, to review all relevant information regarding the dispute and the bankruptcy notices they received.

92.     Consequently, Bank of Missouri, Synovus, and WebBank continued to furnish inaccurate data to Defendant Equifax despite knowledge of Plaintiff's disputes and otherwise possessing information from which Bank of Missouri, Synovus, and WebBank should have reported accurate information about the Accounts.

93.     Equifax inaccurately reported that Plaintiff was late or charged off in months following the Plaintiff's Chapter 13 bankruptcy filing, and in the case of Equifax and the WebBank Account that the Plaintiff was also Past Due after the Chapter 13 bankruptcy filing date.

94.     Equifax's reporting of the Accounts is patently false and therefore inaccurate.

95.     If not patently false, Equifax's reporting of the Accounts is materially misleading and therefore inaccurate.

### *Plaintiff's Damages*

96.     Upon information and belief, had Defendants accurately reported the Accounts without additional late payments, charge offs, and past due amounts after the Plaintiff filed for Chapter 13 bankruptcy, Plaintiff's credit scores and/or credit worthiness would have been better.

97.     After Plaintiff's bankruptcy filing Plaintiff applied for credit through Lendmark Financial and Capital One but was denied due to the inaccurate reporting by Defendants.

98.     Defendants' inaccurate reporting of the Accounts, along with additional information belonging to Plaintiff, was also published to numerous creditors by Equifax.

99.     Plaintiff has tremendous stress and anxiety due to personal relationship and financial issues. Filing for Chapter 13 was a relief for her, but then she had to deal with all the credit reporting errors that ensued, mailing multiple disputes. Although some issues were corrected, Defendants still refuse to correct their errors on the Accounts, causing significant stress and exacerbation of anxiety to Plaintiff while she is trying to purchase a home.

100.    As a direct result of Defendants' inaccurate reporting, Plaintiff suffers damages, including credit denials, a decreased credit score, lower overall creditworthiness, and other financial harm.

101.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, loss of sleep, headaches, extreme anxiety, reputational damage, frustration, shock, embarrassment, violation of Plaintiff's right to privacy, and anxiety.

## V.    COUNT I
**Violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681e(b), 1681(i)**
**Equifax**

102.    Plaintiff incorporates by reference all of the above factual allegations of this Complaint as though fully set forth herein at length.

17

103.   The FCRA requires CRAs, like Equifax, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

104.   Equifax negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information pertaining to pre-bankruptcy debts after a Plaintiff received a Discharge Order.

105.   Equifax voluntarily obtained information about Plaintiff's bankruptcy filing to include in Plaintiff's consumer reports.

106.   When Equifax procured and published Plaintiff's bankruptcy information, it had an obligation to ensure it followed reasonable procedures, including its own CRRG guidelines, to report the bankruptcy and its effect(s) with maximal accuracy.

107.   Despite knowledge of these legal obligations, Equifax willfully and consciously breached their known duties and deprived Plaintiff of Plaintiff's rights under the FCRA.

108.   Equifax knew or should have known of its obligations under the FCRA, especially pertaining to reporting debts included in a Chapter 13 bankruptcy.

109.   These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving CRAs from which Equifax is on notice of its unreasonable procedures concerning the reporting of debts included in a Chapter 13 bankruptcy.

110.   Additionally, Equifax possesses or could easily obtain substantial written materials that detail CRAs' duties and obligations under the FCRA, including those that apply when consumers file for Chapter 13 Bankruptcy.

111.   However, Equifax inaccurately reported the Accounts that predated Plaintiff's Chapter 13 Bankruptcy and that were included Plaintiff's bankruptcy filing.

112.   Equifax had actual knowledge of Plaintiff's bankruptcy and Filing Date, as evidenced by the information they published in her consumer reports, including her bankruptcy case number, court, and date of filing.

113.   Equifax is also on notice from other tradelines reported by Equifax that indicate Plaintiff's accounts were included in and discharged in bankruptcy.

114.   Equifax received notice of Plaintiff's bankruptcy through public records, its own files, and information provided by data furnishers.

115.   Equifax knows that Chapter 13 bankruptcy debts should not be reported as late, charged off, or past due, **after** the filing date.

116.   Equifax had prior notice of its unreasonable procedures for reporting Chapter 13 bankruptcy debts.

117.   Equifax also possessed information from which it should know the information reported about Plaintiff was inaccurate, as Plaintiff's consumer reports include: the date the consumer filed bankruptcy, as well as the date the inaccurate tradeline account/debt arose or was otherwise opened by the consumer.

118.    Yet in this case, Equifax reported the WebBank Account with late payments/ charge offs after the Chapter 13 bankruptcy filing date and in the case of Equifax, also with a Past Due after the filing date.

119.    Equifax also reported the Accounts with late payments/ charge offs after the Chapter 13 bankruptcy filing date.

120.    Equifax violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report.

121.    Equifax also violated 15 U.S.C. § 1681e(b) by failing to report accurate information when they knew or should have known the information they are reporting is inaccurate, and/or otherwise contradicted by information known by the CRAs, reported to the CRAs, and/or reasonably available to the CRAs.

122.    Equifax's violations of 15 U.S.C. § 1681e(b) were willful.

123.    Alternatively, Equifax' violations of 15 U.S.C. § 1681e(b) were negligent.

124.    Even after Plaintiff notified Equifax multiple times of the inaccurate information they included in Plaintiff's credit file, Equifax continued to inaccurately report the Accounts with late payments/ charge offs/ past due amounts after the bankruptcy filing date.

125.    Equifax also failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by unreasonably relying on the furnisher, where, as here, Equifax possessed the information confirming that the Accounts were included in bankruptcy and that they were

reporting late payments after the Chapter 13 bankruptcy filing date, and/or specific notice from Plaintiff.

126.   Equifax also failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by failing to verify that the unsecured WebBank Account was included in the Plaintiff's Chapter 13 bankruptcy following Plaintiff's disputes. The information necessary to do so can be retrieved from the same sources Equifax procures consumer bankruptcy information.

127.   Additionally, Equifax also failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by failing to verify that the Accounts were included in the Plaintiff's Chapter 13 bankruptcy following Plaintiff's disputes. Again, the information necessary to do so can be retrieved from the same sources Equifax procures consumer bankruptcy information.

128.   When a consumer disputes the accuracy or completeness of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

129.   When conducting its reinvestigation of disputed information in a consumer report, the consumer reporting agency is required to "review and consider all relevant information submitted by the consumer."

130.   Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When

notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

131.    Thus, in addition to violating the FCRA by failing to follow reasonable procedures as 15 U.S.C. § 1681e(b) requires, Equifax violated the FCRA by failing to perform a reasonable reinvestigation of the disputed Accounts even after Plaintiff notified Equifax of the inaccurate information reported in Plaintiff's credit files.

132.    Defendant Equifax's violations of 15 U.S.C. § 1681i include, but are not limited to the following:

      a.    Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

      b.    Failing to consider all relevant information while investigating Plaintiff's dispute.

      c.    Failing to include all relevant information when notifying the Bank of Missouri and WebBank, Comenity, and Synovus of Plaintiff's disputes.

133.    Equifax's conduct, as described above, was done willfully and knowingly; or alternatively Equifax's conduct was negligent.

134.    Equifax's inaccurate reporting damaged Plaintiff's creditworthiness.

135.    Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by Equifax inaccurately reporting late payments and charge offs for the WebBank Account debt that was included

22

in bankruptcy and additional damage from Equifax's inaccurate reporting of late payments for the Accounts.

136.   Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

137.   Equifax is the direct and proximate cause of Plaintiff's damages.

138.   Equifax is a substantial factor in Plaintiff's damages.

139.   Therefore, Equifax is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## VI.   COUNT II
### (Violations of the FCRA, 15 U.S.C. § 1681s-2(b))
### Bank of Missouri and Synovus

140.   Plaintiff incorporates by reference all the above factual allegations of this Complaint as though fully stated herein.

141.   The FCRA requires that furnishers of information like Bank of Missouri and Synovus (the Furnisher Defendants) conduct an investigation with respect to disputed information, review all relevant information, and report the results of the investigation to the consumer reporting agency. If the investigation reveals the information is incomplete or inaccurate, report those results to all consumer reporting agencies to which the furnisher has provided the inaccurate information.

142.   The Furnisher Defendants knew or should have known about their obligations under the FCRA. These obligations are well established in the plain language

23

of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law. The Furnisher Defendants possess or can easily obtain substantial written materials that detail their duties as furnishers under the FCRA.

143.   Despite knowing these legal obligations, the Furnisher Defendants acted consciously in breaching their known duties and deprived Plaintiff of her rights under the FCRA.

144.   Plaintiff disputed the  Accounts through all three national CRAs: Defendants Experian, Equifax, and TransUnion.

145.   .

146.   Thereafter, the consumer reporting agencies forwarded Plaintiff's disputes to the Furnisher Defendants, notifying them that Plaintiff was disputing the information they had furnished about the Accounts.

147.   The Furnisher Defendants received notice of Plaintiff's disputes and failed to reasonably investigate or otherwise take corrective measures despite possessing all relevant knowledge regarding the disputes.

148.   The Furnisher Defendants continue to furnish inaccurate information about Plaintiff to Equifax, even though the Furnisher Defendants possessed all relevant information about the Accounts and the inaccuracies that Plaintiff disputed.

149.   The inaccurate Bank of Missouri and Synovus Accounts materially and adversely affects Plaintiff's credit standing.

150.   On at least one occasion within the past two years, by example only and without limitations, the Furnisher Defendants violated 15 U.S.C. § 1681s-2(b)(1)(A) by

failing to fully and properly investigate Plaintiff's dispute to Experian, Equifax, and Trans Union.

151. The Furnisher Defendants violated sections 15 U.S.C. §§ 1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance of 15 U.S.C. § 1681s-2(a), (b), and engaging in conduct that violates 15 U.S.C. § 1681s-2(a), (b), including:

a. Willfully and negligently failing to conduct an investigation of Plaintiff's dispute, despite possessing knowledge, information, and records to substantiate Plaintiff's dispute;

b. Willfully and negligently failing to review all relevant information concerning Plaintiff's dispute;

c. Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

d. Willfully and negligently failing to report to the CRAs that the disputed information is indeed inaccurate;

e. Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiff;

f. Willfully and negligently continuing to furnish and disseminate inaccurate credit, account and other information concerning the Plaintiff to the consumer reporting agencies despite actual knowledge of the falsity of the reported information; and

g.  Willfully and negligently failing to comply with the requirements for furnishers of information enumerated in 15 U.S.C. § 1681s-2(b).

152.  The Furnisher Defendants unreasonably refused to take corrective measures required by the FCRA to correct and/or update Plaintiff's consumer information furnished to the national consumer reporting agencies.

153.  The Furnisher Defendants are direct and proximate causes, as well as a substantial factors in causing damage and harm to Plaintiff.

154.  Consequently, The Furnisher Defendants are liable to Plaintiff for the full amount of statutory, actual, and punitive damages, as described herein and as allowable by law. Additionally, Plaintiff is entitled to Plaintiff's attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and § 1681o.

## VII.  <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendants for the following:

(a)  Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681e(b);

(b)  An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c)  An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d)     An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C.

       § 1681n(a)(2),

(e)     Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and

       § 1681o(a)(2); and

(f)     Such other and further relief as this Honorable Court may deem just and

       proper, including any applicable pre-judgment and post-judgment interest,

       and/or declaratory relief.

## VIII.  <u>JURY DEMAND</u>

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 31st day of May 2022.

> <u>*/s/Ryan Farnsworth*</u>
> Ryan Farnsworth, ID # 8885
> Avery Law
> 770 S. Woodruff Ave
> Idaho Falls, ID 83401
> Tel: 208-524-3020
> Fax: 208-524-2051
> Email: ryan@averylaw.net
> *Attorney for Plaintiff*
> *Stacey Woodington*